

O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

United States District Court
Southern District of Texas
FILED

MAY - 1 2009

Michael N. Milby, Clerk

CYNTHIA ALCALA, *et al.*,       §
                                §
        Plaintiffs,             §
                                §
VS.                             §    CIVIL ACTION NO. L-08-0128
                                §
TEXAS WEBB COUNTY, *et al.*,    §
                                §
        Defendants.             §

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Mary Ethel Novoa and Patricia Barrera's "Motion to Stay Civil Proceedings in this Case" (Dkt. Nos. 45, 56). Defendants move the Court to issue a complete stay of this civil action until the conclusion of Novoa's pending state court trial. Plaintiffs have filed a response to Defendants' Motion and are opposed to a stay. (Dkt. No. 46). After having considered the parties' arguments and the applicable case law, the Court holds that a complete stay of these civil proceedings is unwarranted. However, the Court will GRANT a limited stay to continue as to Defendant Novoa only until May 24, 2009. As such, and as detailed below, Defendants' Motion (Dkt. Nos. 45, 56) is DENIED in part and GRANTED in part.

### Background

In January of 1993, Barrera took elected office as Webb County Tax Assessor/Collector and currently serves Webb County in that capacity. (Dkt. No. 12 at ¶ 18). Defendants Novoa, Rosa Hernandez, and Dora Jimenez are supervisors for the Webb County Tax Assessor/Collector's Office (the "WCTAC"). (*Id.* at ¶¶ 13-15). Each of the ten Plaintiffs, at one time or another, was an employee with the WCTAC, but either resigned or was terminated.

1

According to Plaintiffs, beginning in 1994, the WCTAC began to hold a series of raffles sanctioned by Barrera. (*Id.* at ¶¶ 19, 21). Allegedly, the "Employee Fund Raffle" became an annual event used to raise money for the WCTAC Christmas party. (*Id.* at ¶ 19). Plaintiffs also assert that, by 1996, a separate raffle, the "*Rifa Entre Amigos*" (or the "Raffle Among Friends"), was being held at the WCTAC three times a year. (*Id.* at ¶¶ 21-22). Plaintiffs claim that this particular raffle was for the benefit of Barrera, as the money derived there from was used, in part, to fund Barrera's re-election campaigns and to pay for calendars bearing Barrera's name and title, which were given away annually to WCTAC patrons.[1] (*Id.* at ¶ 29).

All WCTAC employees, including Plaintiffs, were allegedly recruited by Defendants to sell a specific number of raffle booklets for each raffle. (*Id.* at ¶¶ 22, 25-28). Plaintiffs assert that participation in the selling of tickets was mandatory and a condition of employment with the WCTAC. (*Id.* at ¶¶ 25, 27). Raffle tickets were purportedly sold openly at the WCTAC during regular business hours. (*Id.* at ¶¶ 20, 30). According to Plaintiffs, WCTAC employees who were issued tickets were required to sell those tickets, both during work hours and non-work hours, to both WCTAC patrons and to their own family members. (*See id.* at ¶ 20). Allegedly, employees themselves had to purchase any tickets that were issued to them but remained unsold by the raffle deadlines. (*Id.* at ¶¶ 27-28). Plaintiffs aver that Defendants "enforced participation in the raffles by verbal threats, intimidation and open hostility, including, but not limited to, the threat of termination, the threat that terminated employees would be black-balled from other government and non-government jobs, or other unspecified retaliation." (*Id.* at ¶ 23). The money WCTAC employees collected from the sale of raffle tickets was allegedly paid directly to

---

[1] Apparently, these calendars contained the following statement: "Patricia Barrera, Webb County Tax-Assessor-Collector, *not printed at taxpayer expense.*" (Dkt. No. 12 at ¶ 29) (emphasis in original).

Barrera or one of the Defendant-supervisors. (*Id.* at ¶ 34). Plaintiffs also claim that drawings for these raffles occurred openly at the WCTAC. (*Id.* at ¶ 35).

Apart from these raffles, Plaintiffs assert that in 2000, Defendants began mandating WCTAC employee participation in football pots (or betting pools). (*Id.* at ¶ 36). Supposedly, these pots centered on the outcomes of football games like the Dallas Cowboys' annual Thanksgiving Day game and the Super Bowl. (*Id.*). Plaintiffs allege that each square (or stake in the pot) cost twenty dollars, and that each WCTAC employee was required, as a condition of employment, to either purchase one square for him or herself, or to sell two squares. (*Id.* at ¶¶ 37, 40). Like participation in the raffles, Defendants purportedly enforced participation in these football pots through threats of termination and retaliation. (*Id.* at ¶ 39).

Mandating participation in these raffles and football pots is not the only objectionable activity alleged by Plaintiffs against Defendants. Plaintiffs claim that mandatory re-election campaigning on behalf of Barrera was another condition of employment at the WCTAC. (*Id.* at ¶¶ 70-82). According to Plaintiffs, Barrera required that WCTAC employees place Barrera campaign bumper stickers on their cars, maintain a Barrera campaign sign outside their homes, and volunteer at Barrera campaign headquarters. (*Id.* at ¶¶ 71, 73, 75). These activities were supposedly enforced, in part, by threats of termination for failure to comply. Several Plaintiffs claim that they were indeed fired for refusing to engage in campaign activity for Barrera. (*Id.* at ¶¶ 71, 76-77).

After whistle-blowing by then and former WCTAC employees, including by two of the Plaintiffs, the Attorney General of the State of Texas began to investigate the activities at the WCTAC. (*Id.* at ¶¶ 43, 53). On October 11, 2007, pursuant to a search warrant, the Attorney General's office conducted a raid of the WCTAC, which resulted in the seizure of evidence. (*Id.*

3

at ¶¶ 44-45; Dkt. No. 45, Ex. B).  In the following months, investigators with the Attorney General conducted interviews of WCTAC employees, and some employees were subpoenaed to testify before a Grand Jury.  (Dkt. No. 1 at ¶¶ 48, 59, 66).  Plaintiffs allege that WCTAC employees were threatened with retaliation by Barrera and the Defendant-supervisors if they spoke to investigators. (*Id.* at ¶¶ 49-52, 54-57).  Those employees, including one Plaintiff, who testified or were suspected of testifying before the Grand Jury, were purportedly terminated. (*Id.* at ¶¶ 67-68).

By early September of 2008, the last of all the above-captioned Plaintiffs had either resigned or had been terminated from the WCTAC.  On September 24, 2008, Plaintiffs filed the instant federal civil action against Webb County, Texas, Barrera (in her individual and official capacities), and the Defendant-supervisors, Novoa, Hernandez, and Jimenez (also in their respective individual and official capacities).  (Dkt. No. 1).  Plaintiffs bring suit, *inter alia*, pursuant to 42 U.S.C. § 1983, alleging civil rights violations under the First and Fourteenth Amendments of the United States Constitution. (Dkt. No. 12 at ¶ 155).  Plaintiffs also allege that Defendants violated various state law offenses.

The same day Plaintiffs filed their lawsuit, Defendant Novoa was indicted in Webb County on state charges of gambling promotion[2] and engaging in organized criminal activity.[3] (Dkt. No. 45, Ex. C).  The indictment charges that Novoa:

---

[2] More specifically, Novoa is charged with a violation of Texas Penal Code § 47.03(a)(3), which provides that "[a] person commits an offense if he intentionally or knowingly . . . for gain, becomes a custodian of anything of value bet or offered to be bet . . . ."  An offense under § 47.03 is a Class A misdemeanor.  TEXAS PENAL CODE § 47.03(b).

[3] This involves a violation of Texas Penal Code § 71.02(a)(2), which provides that "[a] person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination or as a member of a criminal street gang, he commits or conspires to commit . . . any gambling offense punishable as a Class A misdemeanor . . . ."  Because Novoa is also charged with engaging in organized criminal activity, the offense of gambling promotion becomes a state jail felony.  TEXAS PENAL CODE § 71.02(b).  A Texas state jail

. . . did unlawfully with intent to establish, maintain, and participate in a combination and in the profits of a combination, said combination consisting of defendant and two or more other persons, commit the Class A misdemeanor offense of Gambling Promotion, and in furtherance of said combination, DEFENDANT, on or about and between May 24, 2006 and May 24, 2007 pursuant to one scheme and continuing course of conduct, did then and there intentionally and knowingly for gain become the custodian of a thing of value bet or offered to be bet, to-wit: money for raffle tickets.

(*Id.*).  While Novoa is accused of acting with two or more other persons, she is currently the only defendant in this case who has been indicted.

Eventually, Barrera, Novoa, and the other Defendant-supervisors all filed separate answers to Plaintiffs' complaint.  With respect to Plaintiffs' claims regarding raffles at the WCTAC, in her answer, Novoa generally admits that raffles, sanctioned by Barrera, took place. (Dkt. No. 28 at ¶¶ 4, 6-7, 9).  She also admits that it was known to WCTAC employees that some of the money collected from the "Raffle Among Friends" was used for Barrera's campaigns and for "giveaways" to patrons of the WCTAC.  (*Id.* at ¶ 12).  However, Novoa denies that these raffles constituted "gambling" and that any participation by WCTAC employees was mandatory. (*Id.* at ¶¶ 4, 9).  She also denies that raffle ticket money collected by the WCTAC employees was paid directly to her.  (*Id.* at ¶ 13).

In the case of Barrera, she too admits that raffles occurred amongst the WCTAC employees.  (Dkt. No. 36 at ¶ 7).  Barrera also admits that she would, on occasion, conduct ceremonial drawings for the "Raffle Among Friends," and that part of the monies collected from that raffle "were utilized to pay for calendars and materials which were considered to be promotional in nature."  (*Id.* at ¶ 9).  However, Barrera denies that mandatory gambling was a

---

felony is punishable, in part, by "confinement in a state jail for any term of not more than two years or less than 180 days" and a fine of not more than $10,000.  TEXAS PENAL CODE § 12.35(a), (b).

condition of employment at the WCTAC.  (*Id.* at ¶ 6).  Barrera also denies that raffle ticket money collected by the WCTAC employees was paid directly to her.  (*Id.* at ¶ 8).

Hernandez and Jimenez deny that raffles ever took place at the WCTAC. (Dkt. No. 30 at ¶ 5; No. 34 at ¶ 2).  Jimenez also objects to Plaintiffs' framing of this activity as "gambling" and "sanctioned." (Dkt. No. 34 at ¶ 2).  As to most of the rest of Plaintiffs' claims, Jimenez has invoked her privilege against self-incrimination due to the Texas Attorney General's ongoing criminal investigation into the WCTAC. (*Id.* at ¶ 5).  Jimenez is the only defendant to have invoked her Fifth Amendment rights thus far.

On January 22, 2009, Novoa and Barrera filed this motion requesting that the Court stay the civil proceedings in this case pending completion of the ongoing state criminal action against Novoa. (Dkt. No. 45 at ¶ 3).  None of the other Defendants joined in this motion, nor did they file a separate request for a stay.  Plaintiffs filed their response in opposition to the stay on January 26, 2009. (Dkt. No. 46).

## Discussion

### I. Legal Standard

It is not altogether uncommon that a defendant will find himself or herself facing separate civil and criminal prosecutions stemming from the same transaction or occurrence.  For instance, this occurs quite often in the securities field, where parallel actions may be brought at the same time by different agencies of the federal government.  However, the Supreme Court has established that there exists no general constitutional, statutory, or common law prohibition against the prosecution of parallel criminal and civil actions, even where such actions proceed simultaneously. *SEC v. First Fin. Group of Texas, Inc.*, 659 F.2d 660, 666-67 (5th Cir. 1981) (citing *United States v. Kordel*, 397 U.S. 1, 11 (1970)).  Thus, whether to stay a civil action

pending resolution of a parallel criminal prosecution is not a matter of constitutional right, but, rather, one of court discretion, that should be exercised when the interests of justice so require. *Kordel*, 397 U.S. at 12 n.27; *Dominguez v. Hartford Fin. Servs. Group, Inc.*, 530 F.Supp.2d 902, 905 (S.D. Tex. 2008). A district court's discretionary authority to stay proceedings stems from its inherent authority to control the disposition of the cases on its own docket "with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). These same principles apply where, as in the present case, a state criminal prosecution and a federal civil action are involved. *See, e.g., St. Martin v. Jones*, 2008 WL 4534398 (E.D. La. Oct. 2, 2008); *Agueros v. Vargas*, 2008 WL 2937972 (W.D. Tex. July 21, 2008).

There are several reasons why a court may wish to exercise its discretion and stay a parallel civil case. One primary goal of a stay, when a stay is indeed warranted, is to preserve a defendant's Fifth Amendment right against self-incrimination and to resolve the conflict he would face between asserting this right and defending the civil action. *See SEC v. Dresser Industries, Inc.*, 628 F.2d 1368, 1376 (D.C. Cir 1980) (en banc), *cert. denied*, 449 U.S. 993 (1980); *see also Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp. 1134, 1138 (S.D.N.Y. 1995); *see also Heller Healthcare Fin., Inc. v. Boyes*, 2002 WL 1558337, at *3 (N.D. Tex. July 15, 2002). Furthermore, a stay may be justified in order to prevent extending criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), exposing the defense's theory to the prosecution in advance of trial, or otherwise prejudicing the criminal case. *Dresser*, 628 F.2d at 1376; *Plumbers and Pipefitters*, 886 F.Supp. at 1138. The Fifth Circuit has advised that when handling a motion to stay a civil case, a court should be sensitive to the differences between the civil and criminal rules of

discovery, noting that "[w]hile the Federal Rules of Civil Procedure have provided a well-stocked battery of discovery procedures, the rules governing criminal discovery are far more restrictive." *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962).  Given these differences:

> Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other.  In some situations it may be appropriate to stay the civil proceeding.  In others it may be preferable for the civil suit to proceed—unstayed.  In the proper case the trial judge should use his discretion to narrow the range of discovery.

*Id.* (internal citation omitted).

Regardless, "[i]t 'is the rule, rather than the exception' that civil and criminal cases proceed together." *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F.Supp.2d 758, 761 (W.D. Tex. 2008) (quoting *IBM v. Brown*, 857 F.Supp. 1384, 1387 (C.D. Cal. 1994)).  And the complete stay of a pending civil action until the conclusion of a related criminal proceeding is considered to be an "extraordinary remedy."  *In re Piperi*, 137 B.R. 644, 646-47 (Bankr. S.D. Tex. 1991) (citing *Weil v. Markowitz*, 829 F.2d 166, 174 (D.C. Cir. 1987)); *see also Plumbers and Pipefitters*, 886 F.Supp. at 1139.  One reason for this is that a complete stay is tantamount to a defendant's "blanket assertion" of the Fifth Amendment, which is itself improper.  *SEC v. Incendy*, 936 F.Supp. 952, 957 (S.D. Fla. 1996); *see United States v. Little Al*, 712 F.2d 133, 134-136 (5th Cir. 1983); *see also First Financial*, 659 F.2d at 668-69; *see also United States v. Goodwin*, 625 F.2d 693, 701 (5th Cir. 1980).  Generally, a party is required to selectively invoke the privilege against self-incrimination and object with specificity to the information sought from him.  *First Financial*, 659 F.2d at 668.  This allows a district court to conduct a particularized inquiry, deciding in connection with each specific area that the questioning party seeks to explore, whether or not the privilege is well-founded.  *Id.* (quoting *United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir. 1976)) (quotation marks

omitted).  Whether a party is entitled to the protection of the privilege is for the court to decide, not the invoking party.  *Id.*

As far as the civil case is concerned, there is a strong presumption in favor of discovery, and it is the party who moves for a stay that bears the burden of overcoming this presumption. *Fresenius Medical*, 571 F.Supp.2d at 761 (citing *United States v. Gieger Transfer Serv., Inc.*, 174 F.R.D. 382, 385 (S.D. Miss. 1997)).  A district court should stay the civil case only upon a showing of "special circumstances," so as to prevent the defendant from suffering substantial and irreparable prejudice.  *First Financial*, 659 F.2d at 668 (citing *Kordel*, 397 U.S. at 11-13); *Dresser*, 628 F.2d at 1377.

In determining whether "special circumstances" warrant a stay, a court must measure the relative weights of competing constitutional and procedural interests. *See First Financial*, 659 F.2d at 668; *see also Wehling v. Columbia Broadcasting System, Inc.*, 608 F.2d 1084, 1088 (5th Cir. 1979); *see also LeBouef v. Global X-Ray*, 2008 WL 239752, at *2 (E.D. La. Jan. 29, 2008). Those interests were articulated by District Judge Louis H. Pollak and Magistrate Judge William F. Hall, Jr. in *Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53 (E.D. Pa. 1980).  In *Golden Quality*, the court held that whether to stay a civil action by reason of a pending criminal action involved a balancing of the following interests: (1) the plaintiff's interest in proceeding expeditiously in the civil case, balanced against the potential prejudice to the plaintiff caused by a delay; (2) the defendant's interest and the burden which any particular aspect of the proceedings may impose on him; (3) the court's interest in the management of its cases and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the public's interest in the pending civil and criminal litigation. *Golden Quality*, 87 F.R.D. at 56.  Over time, this test has been adopted by other courts

and has evolved—some factors have been dropped and others added.  *Compare Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980), *with Arden Way Assocs. v. Boesky*, 660 F.Supp. 1494, 1497-98 (S.D.N.Y. 1987) (citing *Golden Quality*, 87 F.R.D. at 56), *with Volmar Distribs., Inc. v. New York Post Co., Inc.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (citing *Arden Way*, 660 F.Supp. at 1497-98), *with Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp. 1134, 1139 (S.D.N.Y. 1995) (citing *Volmar Distribs.*, 152 F.R.D. at 39; *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201 (Pollack, J.)), *with Heller Healthcare Fin., Inc. v. Boyes*, 2002 WL 1558337, at *2 (N.D. Tex. July 15, 2002) (citing *Plumbers and Pipefitters*, 886 F.Supp. at 1139).

The test (or a variation thereof) that is generally used today was first articulated by District Judge Denny Chin in *Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F.Supp. 1134 (S.D.N.Y. 1995).  In *Plumbers and Pipefitters*, the court modified the traditional "balancing of the interests" test developed by the *Golden Quality* court by weighing two additional factors as part of the analysis: the extent to which the issues in the criminal case overlap with those presented in the civil case; and the status of the criminal case, including whether the defendants have been indicted.[4]  *Id.* at 1139.  District courts in the Fifth Circuit who apply the *Plumbers and Pipefitters* test consider or weigh the six following factors: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest.  *See, e.g., St. Martin v.*

---

[4] The *Plumbers and Pipefitters* court also dropped one factor, the interests of persons not party to the civil litigation, because it was deemed inapplicable by the court and had not been raised by the parties.  *Plumbers and Pipefitters*, 886 F.Supp. at 1139 n.7.

*Jones*, 2008 WL 4534398, at *1 (E.D. La. Oct. 2, 2008); *United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F.Supp.2d 758, 762 (W.D. Tex. 2008); *Agueros v. Vargas*, 2008 WL 2937972, at *1 (W.D. Tex. July 21, 2008); *Akuna Matata Invs., Ltd. v. Texas Nom Ltd. P'ship*, 2008 WL 2781198, at *2 (W.D. Tex. April 14, 2008); *SEC v. Offill*, 2008 WL 958072, at *2 (N.D. Tex. Apr. 9, 2008); *United States v. Simcho*, 2008 WL 2053953, at *3 (N.D. Tex. Mar. 31, 2008); *SEC v. AmeriFirst Funding, Inc.*, 2008 WL 866065, at *2 (N.D. Tex. Mar. 17, 2008); *LeBouef v. Global X-Ray*, 2008 WL 239752, at *1 (E.D. La. Jan. 29, 2008); *Dominguez v. Hartford Fin. Servs. Group, Inc.*, 530 F.Supp.2d 902, 905 (S.D. Tex. 2008); *Whitney Nat'l Bank v. Air Ambulance ex rel. B&C Flight Mgmt., Inc.*, 2007 WL 1468417, at *2 (S.D. Tex. May 18, 2007); *Shaw v. Hardberger*, 2007 WL 1465850, at *2 (W.D. Tex. May 16, 2007); *Holden Roofing, Inc. v. All States Roofing, Inc.*, 2007 WL 1173634, at *1 (S.D. Tex. Apr. 18, 2007); *State Farm Lloyds v. Wood*, 2006 WL 3691115, at *1 (S.D. Tex. Dec. 12, 2006); *Lewis v. City of Garland*, 2005 WL 2647956, at *2 (N.D. Tex. Oct. 14, 2005); *SEC v. Mutuals.com, Inc.*, 2004 WL 1629929, at *3 (N.D. Tex. July 20, 2004); *Frierson v. City of Terrell*, 2003 WL 22479217, at *2 (N.D. Tex. Aug. 4, 2003); *Librado v. M.S. Carriers*, Inc., 2002 WL 31495988, at *1 (N.D. Tex. Nov. 5, 2002); *Heller Healthcare Fin., Inc. v. Boyes*, 2002 WL 1558337, at *2 (N.D. Tex. July 15, 2002).[5] Although not usually considered by district courts in the Fifth Circuit, another important factor articulated by the *Golden Quality* court involves balancing the interests of persons not parties to the civil litigation.

The Court agrees that all of these factors are important in determining whether the stay of a civil case should be granted. However, the Court believes that the two additional factors articulated in *Plumbers and Pipefitters*—namely, the overlap between the civil and criminal

---

[5] *Plumbers and Pipefitters* is the genesis of this test.  All the cases cited here either cite *Plumbers and Pipefitters* directly, or cite a case that cites *Plumbers and Pipefitters*.

cases and the status of the criminal case—are not *independent* factors for the Court to consider. Rather, they are factors important in determining how the interests of the parties, the Court, third parties, and the public will be weighed against each other.[6]  In other words, because factors like overlap and the status of the criminal case may substantially impact the interests of the parties, the Court, third parties, and the public, these two factors should be analyzed within the framework of those interests.  "This balancing-of-the-interests approach ensures that the rights of both [the defendant and the plaintiff] are taken into consideration before the court decides whose rights predominate." *Wehling*, 608 F.2d at 1088.

## II. Analysis

After having balanced the above-referenced competing interests and how overlap and the status of the criminal case impacts those interests, the Court holds that a complete stay of these proceedings is not warranted.

---

[6]  The Court is well aware that its own understanding of this six-factor test may differ slightly from that of other district courts.  However, the Court views as problematic the balancing of concepts like "overlap of issues" and "status of the criminal case," with concepts like "defendant's interests," "plaintiffs' interests," and the Court's own interests in this matter.  In *Golden Quality*, this test was originally viewed as a balancing of competing interests.  Whether there is significant overlap of the issues between the civil and criminal case is an important aspect of the analysis—maybe, even, the most important.  But only because it and the "status of the criminal case" will affect how much weight to accord to the competing interests and how those interests are ultimately balanced against each other.  Simply stated, the overlap of the criminal and civil cases is not something to "balance," *per se*, but, rather, something to consider in determining how the balancing of the various interests in a case will play out.  Regardless, while the Court's analysis of this test may be different, its application should yield the same result.  Arguably, the Court's understanding of this test aligns more closely with the test applied by the Ninth Circuit Court of Appeals, whose test derives directly from the source—the *Golden Quality* case.  *See Federal Sav. and Loan Ins. Corp. v. Molinaro*, 889 F.2d 899 (9th Cir. 1989) (citing *Golden Quality*, 87 F.R.D. at 56); *see also Keating v. Office of Thrift Supervision*, 45 F.3d 322 (9th Cir. 1995) (citing *Molinaro*, 889 F.2d at 902-03); *see also Lizarraga v. City of Nogales Arizona*, 2007 WL 215616 (D. Ariz. Jan. 24, 2007) (citing *Keating*, 45 F.3d at 324-25).

## A. The Balancing of Interests

### 1. Defendants' Interest

In deciding whether to issue the stay, the Court first considers the interests of the moving defendants.[7]  As previously stated, the Court evaluates those interests primarily by analyzing how overlap and the status of the criminal case may affect those defendants.

Overlap can be particularly important to a defendant's interests.[8]  For example, a defendant has an interest in preventing a parallel civil action from prejudicing his criminal defense.  As noted above, if a court does not stay a parallel civil action, then the civil case might undermine the defendant's Fifth Amendment privilege against self-incrimination by expanding rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), by exposing the basis of the defense to the prosecution in advance of criminal trial, or by prejudicing the criminal case through other means.  *See Dresser*, 628 F.2d at 1376.  Simply stated, a defendant may be burdened by liberal civil discovery on the same issues as those in the pending criminal case, where discovery would be otherwise limited.  *See Whitney*, 2007 WL 1468417, at *3; *see also Campbell*, 307 F.2d at 487; *see also Dresser*, 628 F.2d at 1376.

A defendant also has an interest in avoiding the quandary of choosing between waiving his Fifth Amendment rights and effectively forfeiting the civil case.  *Plumbers and Pipefitters*, 886 F.Supp. at 1140.  A defendant is more likely to face this quandary where the subject matter

---

[7]  Because neither Jimenez nor Hernandez seeks to stay this case, the Court will not address the propriety of according such relief as to these particular defendants.

[8]  It is said that self-incrimination is more likely to occur the more significant the overlap.  *See Plumbers and Pipefitters*, 886 F.Supp. at 1139. Whether there is overlap between the issues in a criminal and civil action "demands a common-sense, fact-bound analysis." *Fresenius Medical*, 571 F. Supp.2d at 762 (citing *In re Ramu Corp.*, 903 F.2d 312, 320 (5th Cir. 1990)).  A court must read the criminal indictment and the civil complaint side-by-side and determine whether the *wrongful conduct* alleged in both cases is similar. *Plumbers and Pipefitters*, 886 F.Supp. at 1139.  Courts caution, however, that "a mere relationship between civil and criminal proceedings and the prospect that discovery in the civil case could prejudice the criminal proceeding does not necessarily warrant a stay." *Fresenius Medical*, 571 F. Supp.2d at 762 (citing *In re Ramu Corp.*, 903 F.2d 312, 320 (5th Cir. 1990)).

of both cases overlaps to a significant degree. *Id.* at 1139 (citing *Parallel Proceedings*, 129 F.R.D. at 203) ("If there is no overlap, there would be no danger of self-incrimination and accordingly no need for a stay."). As such, a court should consider whether, by allowing the civil case to continue, the defendant can effectively defend the civil lawsuit without being pressured into waiving his Fifth Amendment rights.

Furthermore, the status of the criminal case is important in evaluating a defendant's interest in obtaining a stay in the civil proceedings. In fact, status of the criminal case is pivotal to determining the degree of overlap. Analysis centers upon whether the criminal case is pre-indictment in the investigation stage or post-indictment with a set trial date.

Prior to an indictment, whether the issues will even overlap is a mere "matter of speculation." *United States ex rel. Shank v. Lewis Enters., Inc.*, 2006 WL 1064072, at *4 (S.D. Ill. Apr. 21, 2006); *see Square D Co. v. Showmen Supplies, Inc.*, 2007 WL 1430723, at*4 (N.D. Ind. May 14, 2007). Accordingly, courts generally decline to impose a stay where the defendant is under criminal investigation, but has yet to be indicted. *In re CFS*, 256 F.Supp.2d at 1237 (citing *Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F.Supp.2d 573, 576 (S.D.N.Y. 2001)); *Fresenius Medical*, 571 F.Supp.2d at 763 (citing *Shank*, 2006 WL 1064072, at *3). Indeed, a "pre-indictment motion to stay can be denied on this ground alone." *Citibank, N.A. v. Hakim*, 1993 WL 481335, at *1 (S.D.N.Y. Nov. 18, 1993).

Post-indictment is when the degree of overlap between a criminal and civil case can most readily be determined. *Fresenius Medical*, 571 F.Supp.2d at 762. The criminal indictment helps clarify the alleged conduct at issue and can be easily compared against the civil complaint. As such, "[t]he 'strongest case' for a stay exists where a party is indicted for a serious offense and

14

must defend a civil action involving the same matter."[9]  *Lizarraga v. City of Nogales Arizona*, 2007 WL 215616, at *3 (D. Arizona, January 24, 2007) (citing *Dresser*, 628 F.2d at 1377).  It is important to note, however, that even after an indictment has issued, courts are generally split as to the propriety of granting a stay.  *In re CFS*, 256 F.Supp.2d at 1238; *see Worldcom*, 2002 WL 31729501, at *4.  In summary, to warrant a stay, a defendant must make a strong showing that the two proceedings will so overlap that either (1) he cannot protect himself in the civil proceeding by selectively invoking his Fifth Amendment privilege, or (2) effective defense of both [the criminal and civil cases] is impossible.  *Koester v. American Republic Investments, Inc.*, 11 F.3d 818, 823 (8th Cir. 1993).

### a. Novoa

In the case of defendant Novoa, an indictment has been issued, and it is possible to pinpoint the issues at stake with some certainty.  At first glance, there does appear to be some degree of overlap between Novoa's criminal prosecution in state court and the instant federal civil action.  Novoa is being prosecuted for organized gambling promotion.  This allegedly involved Novoa becoming, for gain, the custodian of a thing of value bet or offered to be bet— specifically, money for raffle tickets.  In terms of the civil action, Plaintiffs claim, in part, that they were wrongfully required as a condition of employment at the WCTAC to participate in this organized scheme whereby Novoa became the custodian of the thing of value, or the money for the raffle tickets.  Furthermore, Plaintiffs claim that they were then retaliated against for cooperating with the Attorney General's investigation into this supposed scheme.  Overlap

---

[9] A stay is even more appropriate when the federal government has initiated both the civil and criminal proceedings.  *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y. Dec. 23, 1985); *see Square D Co. v. Showmen Supplies, Inc.*, 2007 WL 1430723, at*4 (N.D. Ind. May 14, 2007); *see also Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F.Supp.2d 573, 578-79 (S.D.N.Y. 2001).  Again, this is quite common in the field of securities regulation. There is likely to be complete overlap between a civil suit by the SEC and a parallel criminal prosecution by the DOJ.

between the two cases would occur, then, with respect to any facts related to Novoa's supposed collection of raffle-ticket money from WCTAC employees.

However, a closer comparison of the criminal indictment and the civil complaint reveals that the wrongful conduct alleged in the civil case is at least one step removed from the wrongful conduct alleged in the criminal case. Whereas in the criminal case, the alleged wrongful conduct centers around the taking and holding of raffle ticket money, the alleged wrongful conduct in the civil case centers around whether WCTAC employment was conditioned on the raising of money through the raffle and the participation in various campaign activities. Liability in the civil case is also based upon an even more tangentially related scenario: whether WCTAC employees were retaliated against for cooperating in an investigation regarding whether employment at the WCTAC was conditioned on the raising of money through the raffle and the participation in various campaign activities. The differences between the wrongful conduct alleged in the civil and criminal cases demonstrates a lack of significant overlap between the two.

The degree of overlap is further reduced by the fact that the prosecutor in the criminal case, namely the State of Texas, is not a party to the civil action. In fact, the potential for prejudice to a criminal defense is diminished where private parties, and not the government, are the plaintiffs in the civil action. *Hakim*, 1993 WL 481335, at *2. Quite possibly the strongest case for a stay occurs when the federal government has initiated both the civil and criminal proceedings. *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y. Dec. 23, 1985); *see Square D Co. v. Showmen Supplies, Inc.*, 2007 WL 1430723, at *4 (N.D. Ind. May 14, 2007); *see also Sterling Nat. Bank v. A-1 Hotels Int'l, Inc.*, 175 F.Supp.2d 573, 578-79 (S.D.N.Y. 2001). "In such circumstances, there is a special danger that the government can effectively undermine rights that would exist in a criminal investigation by conducting a de facto criminal investigation using

nominally civil means." *Sterling*, 175 F.Supp.2d at 579; *see Square D*, 2007 WL 1430723, at*4

(citing *United States ex rel. Shank v. Lewis Enters., Inc.*, 2006 WL 1064072, at *4 (S.D. Ill. Apr.

21, 2006)) ("The court's concern is the risk of the government's use of the broad scope of civil

discovery to obtain information for use in the criminal prosecution."); *see also Campbell*, 307

F.2d at 487.   Arguably, the risks to a defendant's constitutional rights are magnified in such a

situation. *Sterling*, 175 F.Supp.2d at 579.   However, the instant civil case has been brought by

private entities and is not one "in which the government itself has an opportunity to escalate the

pressure on defendants by manipulating simultaneous civil and criminal proceedings, both of

which it controls." *Id.*   The private plaintiffs here have interests distinct from those of the Texas

government, and "[t]here is no reason to assume that [Plaintiffs'] civil case is simply a stalking

horse for the government's criminal inquiry, rather than a good faith effort to obtain

compensation for [their] own private injuries." *Id.*

      Because there is no significant overlap between the civil and criminal cases, little concern

is raised regarding Novoa's Fifth Amendment rights and her ability to defend the civil and

criminal actions.   First in terms of the civil case, if Novoa is indeed asked during discovery

whether any raffles took place at the WCTAC, or whether she collected any raffle monies, she

can admit or deny this, or invoke her Fifth Amendment right not to incriminate herself.   Selective

invocation of the Fifth Amendment as to such a question would not burden her civil defense.

Whether these raffles occurred at the WCTAC, or whether Novoa was the custodian of the raffle

monies, is not the wrongful conduct alleged by Plaintiffs.   Instead, Plaintiffs would have to

prove, in part, for purposes of the civil suit, that Novoa furthered the policy of mandatory

participation in these raffles.   And even if Novoa were indeed asked whether this was the case,

her civil defense would not be unduly burdened through her selective invocation of the Fifth

Amendment in response.  If the evidence in this case simply consisted of one party's word against the other's, the defendant's invocation of the Fifth Amendment privilege would have the potential to hamper the civil defense.  But here, there are literally dozens of witnesses, current and former WCTAC employees, who have seen and experienced what occurred at the WCTAC. (Dkt. No. 45, Exhibit A, Initial Disclosures).  As such, if she were to selectively invoke the Fifth Amendment, Novoa's hands will not be tied because there may be any number of witnesses willing to testify on her behalf and support any claims she may make in defense of her suit.

Regardless, there seems to be little reason to believe that Novoa would selectively invoke her Fifth Amendment privilege against self-incrimination as to any questions whatsoever.  In her answer to Plaintiffs' complaint, Novoa generally admits that raffles occurred at the WCTAC, and she denies any facts that would give rise to the true basis of liability in this civil action—whether participation in these raffles was mandatory and whether she furthered this policy through any number of means.[10]  Simply put, Novoa has denied all of Plaintiffs' allegations as to retaliation or wrongful termination alleged by the former WCTAC employees.  Therefore, there does not seem to be anything incriminating about Novoa testifying regarding the legitimate reasons as to why a former employee was terminated or denying any alleged instances of retaliation.   In summary, Novoa has failed to show that she would be burdened in the civil suit through selective invocation of her Fifth Amendment right, or that it would be impossible to simultaneously defend the criminal and civil actions.

---

[10] Whether Novoa has already waived her Fifth Amendment privilege by even making these admissions and denials in her answer is a question not presently before the Court.  Barrera also makes similar admissions and denials in her respective answer to Plaintiffs' complaint.

### b. Barrera

As for Barrera, she has yet to be indicted.  The degree of overlap is thus speculative at this point. *See Shank*, 2006 WL 1064072, at *3; *Square D Co.*, 2007 WL 1430723, at *4.  Even assuming that Barrera were to be indicted as one of the individuals alleged to have acted in combination with Novoa, again, there would be no significant overlap of the issues. Furthermore, Barrera would not be burdened in the civil suit through selective invocation of her Fifth Amendment right.  Like Novoa, Barrera has the benefit of dozens of witnesses, current and former WCTAC employees, who have seen and experienced what occurred at the WCTAC. Therefore, Barrera cannot show that selective invocation of her Fifth Amendment right would significantly prejudice her civil case.  Also, like Novoa, Barrera did not invoke her Fifth Amendment right in her answer.  She too generally admits that raffles occurred at the WCTAC and denies that participation in these raffles was mandatory or that a lack of participation in the raffles and other campaign activities led to terminations.  Therefore, Barrera, like Novoa, is able to testify that no retaliation occurred and that there were legitimate reasons for any terminations. Finally, Barrera is unable to show that the government is using the civil suit as a means of aiding its prosecution of a criminal action, both because the government is not a party to the civil suit and, in Barrera's case, because no criminal action has yet been initiated.

The Court does note that an investigating officer with the Texas Attorney General Office, Sergeant Alfonso Cavalier, executed an affidavit in support of the WCTAC search warrant, swearing, in part, that Barrera committed the following offense:

> Texas Penal Code, Chapter 39.02 Abuse of Official Capacity [by] allowing county employees to participate in football pots on county property during the course of their normal work day, by mandating that county employees sell raffle tickets during business hours while being paid by the county, by allowing the sale of these raffle tickets during business hours while being paid by the county, by allowing the sale of these raffle tickets in a county facility workplace, and

personally profiting from the sale of these football pots and raffle tickets being sold by said county employees.[11]

(Dkt. No. 54, Ex. B at pg. 9).   While an indictment based on this statement appears to overlap with the civil suit to a greater degree than the conduct alleged in Novoa's indictment, the Court points out that the search warrant was executed back in October 2007—about eighteen months ago.   When the State of Texas initiated a prosecution approximately one year after the execution of that search warrant, it did not indict Barrera on the offense stated in the search warrant. Instead, it indicted Novoa on a separate offense, diminishing the likelihood that Barrera will be indicted based on the conduct stated in the affidavit.   If Barrera is indicted and the conduct alleged in that indictment significantly overlaps with the conduct alleged in the civil suit, the Court will reevaluate whether a stay is warranted.   At this time, however, the degree of overlap is too speculative to warrant a stay of Barrera's case. [12]

### 2. Plaintiffs' Interests

Overlap, or the lack thereof, is also a concern for Plaintiffs' interests.   Because the Plaintiffs are not parties to the criminal case, a delay in their civil case could be prejudicial. When the government is a party to both the civil and criminal actions, a delay in the civil case may not be as significant.   For the most part, the government is able to preserve its interests in the civil case through its prosecution of the criminal case.   Such may not be the case when the plaintiffs, as they are here, are private parties.

---

[11] Section 39.02(a) of the Texas Penal Code provides that "a public servant commits an offense if, with intent to obtain a benefit or with intent to harm or defraud another, he intentionally or knowingly: (1) violates a law relating to the public servant's office or employment; or (2) misuses government property, services, personnel, or any other thing of value belonging to the government that has come into the public servant's custody or possession by virtue of the public servant's office or employment." TEXAS PENAL CODE § 39.02(a).

[12] The Court also notes that Barrera requests a stay until the conclusion of the criminal case against Novoa. But it is unclear to the Court how the conclusion of Novoa's case would impact Barrera, who has yet to be indicted and who could face prosecution even after Novoa's criminal case has concluded.

While "[n]ormally, 'in evaluating the plaintiff's burden resulting from the stay, courts may insist that the plaintiff establish more prejudice than simply a delay in his right to expeditiously pursue his claim,'" *Whitney*, 2007 WL 1468417, at *3 (citing *In re Adelphia Commc'ns Sec. Litig.*, 2003 WL 22358819, at *4 (E.D. Pa. May 13, 2003)), courts recognize that delay can lead to the loss of evidence and duly frustrate a plaintiff's ability to put on an effective case. *Fresenius Medical*, 571 F.Supp.2d at 763; *Sidari v. Orleans County*, 180 F.R.D. 226, 230 (W.D.N.Y. 1997); *SEC v. Brown*, 2007 WL 4192000, at *2 (D. Minn. July 16, 2007); *Hakim*, 1993 WL 481335, at *2.  With the passage of time, witnesses become unavailable, memories of conversations and dates fade, and documents can be lost or destroyed.  *Brown*, 2007 WL 4192000, at *2.

This case was filed back in September of 2008; and due to delays, discovery has yet to begin.  Of particular concern here, then, is the possibility that further postponing discovery by staying this case will prevent Plaintiffs from obtaining information related to whether employee participation in raffles was mandatory at the WCTAC and whether any of the plaintiffs were terminated for any of the wrongful reasons asserted.  The Court expects that if information exists as to the alleged culture or environment of intimidation at the WCTAC, it will most likely have to be elicited through written interrogatories and oral depositions of the plaintiffs and others who took part in or witnessed any liability-creating transactions.  Because such information is couched in memory, the integrity of this information is in danger of degrading over time, and here, considerable time has already elapsed since the alleged events that gave rise to this suit took place.[13]  The last of the plaintiffs to have worked at the WCTAC were terminated in early-

---

[13] The Court notes that while there is also a danger of losing documentary evidence due to the delay, this would probably not be of great consequence to Plaintiffs' case.  Any documents would most likely be relevant only for purposes of establishing that raffles actually took place at the WCTAC.  But as already discussed, whether

September, over six months ago.  Most of the other plaintiffs resigned or were terminated in early-to-mid 2008, and some in 2007.  Thus, because most of the evidence in this case will consist of witness testimony, continued delay will only serve to further prejudice Plaintiffs' ability to obtain discovery.

Regarding the issuance of an indictment against Novoa, it could be argued that "the prejudice to the plaintiffs in the civil case [would be] reduced since the criminal case [would] likely be quickly resolved due to Speedy Trial Act considerations."  *See Plumbers and Pipefitters*, 886 F.Supp. at 1139.  However, such an argument may not have as much force when the criminal defendant faces indictment by the State of Texas versus the federal government. Under the Speedy Trial Act, it is generally required that a federal criminal trial begin within 70 days after a defendant is indicted or makes an initial appearance.  *See* 18 U.S.C. § 3161(c)(1). Thus, after indictment by the federal government, the Speedy Trial Act effectively limits the duration of a stay in a parallel civil case.  The State of Texas, on the other hand, has no Speedy Trial Act.[14]  Accordingly, where a defendant has been indicted by the State of Texas, there is no statutory mechanism by which to set the possible durational limits of a parallel civil action in federal court.[15]

---

raffles occurred at the WCTAC would not, of itself, establish Defendants' liability in the civil case.  Furthermore, Novoa and Barrera generally admit in their answers to the complaint that raffles took place.

[14] In 1987, the Texas Court of Criminal Appeals held that the Texas Speedy Trial Act was unconstitutional because it violated principles of separation of powers under the Texas Constitution.  *Meshell v. State*, 739 S.W.2d 246 (Tex. Crim. App. 1987).

[15] The Sixth Amendment itself is not effective in defining such limits.  "It is . . . impossible to determine with precision when the [Sixth Amendment right to a speedy trial] has been denied."  *Barker v. Wingo*, 407 U.S. 514, 522 (1972).  Whether a defendant has been deprived of this right requires the consideration of several factors, including the length of the delay and whether the defendant has asserted his rights.  *Id.* at 530.  A presumption of prejudice against the accused does not trigger until at least one year from arrest or indictment.  *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).

Here, because Novoa has been indicted by the State of Texas, it is difficult for the Court to determine the duration of a possible stay in this civil case.  In fact, the indictment against Novoa was issued more than six months ago, and the Court takes judicial notice that Novoa's pending trial, which is currently set for May 18, 2009, has already been reset twice before.  As for Barrera, there is no telling when, or even if, she will be indicted.  Plaintiffs may have already been prejudiced by the delay that has occurred thus far, let alone by any further delay of an indefinite duration.

### 3. The Court's Interests

The Court must also balance its own interests.  One such interest is in judicial efficiency.  "The conviction of a civil defendant as a result of the entry of a plea or following a trial can contribute significantly to the narrowing of issues in dispute in the overlapping civil case and promote settlement of civil litigation not only by that defendant but also by co-defendants who do not face criminal charges."  *Worldcom*, 2002 WL 31729501 at *8.  A court, then, must analyze whether, and to what extent, the outcome of the criminal proceeding would serve to simplify or "streamline" the issues and any possible discovery disputes.  Of course, this all depends on the degree of overlap between the criminal and civil cases.

Here, there would be little "streamlining."  Were the State of Texas to establish Novoa's guilt, this civil case would remain unresolved.  Perhaps a criminal conviction against Novoa would establish to some extent, and merely as a threshold matter, that gambling did occur at the WCTAC and that Novoa collected any raffles monies.  However, such a conviction would not speak to the actual bases of liability in this civil action.  Coercing participation in an organized gambling scheme through threats of retaliatory termination, for example, is not the wrongful

conduct for which Novoa has been charged.  As such, it would not be addressed by the State in proving its criminal case, nor would it be adjudicated by the criminal tribunal.

The Court does realize that by proceeding with the civil case, there is a possibility that the Court will have to rule on selective claims of Fifth Amendment privilege and objections to specific information requests during the discovery process.  However, Novoa and Barrera, the only two defendants moving for a stay, have not shown the Court, thus far, that they would selectively invoke their Fifth Amendment privilege.  As already discussed, in their respective answers to the complaint, these defendants have generally admitted that raffles occurred at the WCTAC, and they have denied all other accusations that provide for the true basis of liability in this civil case.  Therefore, it does not appear, at this time, that the Court will have to expend any significant amount of time and effort ruling on any claims of privilege.

Another interest for the Court to consider is judicial expediency, whether staying the civil case will interfere with its management of the docket.  A court "has an obligation to move its docket, and not let cases languish before it."  *In re Scrap Metal Antitrust Litig.*, 2002 WL 31988168, at *7 (N.D. Ohio Nov. 7, 2002).  But that is precisely the danger where, as here, a stay could be of indefinite duration.  As discussed above, Novoa has been indicted by the State of Texas, which has no speedy trial act.  Moreover, no indictment has even been issued in Barrera's case.  Postponement of this suit until the conclusion of Barrera's criminal prosecution, if any, "would require this court either to 'rely upon fortuitous events to manage its docket,' or to guess what criminal acts [she] might be charged with, and consequently which limitations periods apply to those criminal acts . . . ."  *Hakim*, 1993 WL 481335, at *2 (internal citation omitted).

### 4. The Public's and Third-Parties' Interests

Finally, the interests of the public and third parties must be considered.[16]  The public has an interest in the resolution of disputes with minimal delay, but only to the extent that the integrity of the defendant's rights can be maintained.  *St. Martin*, 2008 WL 4534398, at *3; *State Farm Lloyds*, 2006 WL 3691115, at *3; *Frierson*, 2003 WL 21355969, at *4.  The degree of overlap is an important consideration in weighing the public's interests.  As already discussed, there is no significant overlap between Novoa's criminal prosecution and the civil case, so her rights are not at risk.  The status of Barrera's criminal case is also an important consideration. Barrera has not been indicted.  Thus, the risk to her rights is presently unclear, and it is impossible to predict exactly when an indictment will be handed up against her, if at all.  Here then, because the integrity of Novoa and Barrera's rights can be maintained without a stay, the public's interest in resolving the case with minimal delay weighs against a stay.  *St. Martin*, 2008 WL 4534398, at *3.

Third parties may also have an interest in resolving this case with minimal delay. Defendants are currently employed at the WCTAC.  If Plaintiffs' allegations are true, the other WCTAC employees, who are not plaintiffs in this case, have an interest in not being the victims of threats, retaliation, wrongful termination, or pressure to leave their employment.  If Plaintiffs' allegations are false, then Webb County and the WCTAC employees have an interest in exposing the truth promptly.

### Conclusion

After considering the various interests in this case, the Court finds that a stay of the entire case is not warranted.  As such, the Court DENIES Novoa's and Barrera's request to stay this

---

[16] Typically, district courts have analyzed these two factors separately.  Whether these two interests are considered independently or together is immaterial in the overall balancing of interests.

case in its entirety.  All parties should begin discovery immediately.  A stay order will be reversed when found to be immoderate or of an indefinite duration.  *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982).  As such, a district court should carefully consider the time reasonably expected for the resolution of the criminal case.  *See Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1998).  Since Novoa's next state court date is set for May 18, 2009, the Court will GRANT a limited stay to continue as to Defendant Novoa only until May 24, 2009.  During this period, no party should serve interrogatories, requests for admissions, or a notice of deposition on Novoa until May 25, 2009.  All other requests for relief in Novoa and Barrera's motion are DENIED.

IT IS SO ORDERED.

SIGNED this 1st day of May, 2009.

J. SCOTT HACKER
United States Magistrate Judge

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS NOTICE SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**