UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| CYNTHIA ALCALA, *et al*, | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. L-08-128 |
| | § | |
| TEXAS WEBB COUNTY, *et al*, | § | |
| Defendants. | § | |

## OPINION AND ORDER

On May 25, 2009, Defendant Patricia A. Barrera ("Barrera") through her counsel filed an Emergency Motion in this cause of action.[1] [Dkt. No. 77].[2] In this Motion, Barrera moves the Court to (1) handle all future pre-trial matters in these cases; (2) vacate Judge Hacker's Opinions of May 1, 2009 and May 15, 2009; and (3) stay all discovery in this case for eleven months. Plaintiff filed a response on May 28, 2009. [Dkt. No. 81]. For the following reasons, the Court **DENIES** Defendant's Motion of May 25, 2009.

## I.      BACKGROUND AND PROCEDURAL HISTORY

In January 1993, Defendant Barrera assumed elected office as Webb County Tax Assessor/Collector. [Dkt. No. 12 at ¶ 18]. Plaintiffs allege that soon thereafter the Webb County Tax Assessor/Collector's Office ("WCTAC"), where they worked, began to hold a series of raffles to raise money. [*Id.* at ¶¶ 19-22]. According to Plaintiffs, the purpose of one tri-annual raffle, the "*Rifa Entre Amigos*" ("Raffle Among Friends") was, in part, to benefit Barrera's re-election campaign. [*Id.* at ¶ 29]. Plaintiffs aver that all employees had to sell a specific number

---

[1] The full title of this Motion is "Defendant, Patricia A. Barrera's Opposed Emergency Motion for Stay of Proceedings Pendiente Lite Directed to United States District Judge and Motion to Reconsider Magistrate Judge's Denial of Motion to Stay Proceedings, Motion for Vacation of Magistrate Judge's May 15, 2009 Order and Amended Scheduling Order and Motion for Protective Order and for Rule 26 Scheduling Conference." [Dkt. No. 77].
[2] "Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing.

of raffle tickets for the *Rifa Entre Amigos*.  [*Id.* at ¶¶ 22, 25-28].  WCTAC employees had to sell these tickets during both work and non-work hours.  According to Plaintiffs, participation was mandatory and a condition of employment.  [*Id.* at ¶¶ 25, 27]. Defendants, including Barrera, purportedly enforced participation in these raffles through threats of termination and retaliation. [*Id.* at ¶ 23].

Apart from participation in these raffles, Plaintiffs aver that Defendants began in 2000 requiring WCTAC employee participation in football pots (or betting pools).  [*Id.* at ¶ 36]. Allegedly, WCTAC employees also had to campaign on behalf of Barrera in her re-election campaigns.  [*Id.* at ¶¶ 70-82].  According to Plaintiffs, Barrera required WCTAC employees place campaign bumper stickers on their cars, maintain a campaign sign outside their house, and volunteer at her campaign headquarters.  [*Id.* at ¶¶ 71, 73, 75].  These required campaign activities and football pots allegedly also were enforced by threats of termination and retaliation. [*Id.* at ¶¶ 39, 71, 76-77].  Indeed, several Plaintiffs claim they were fired for refusing to engage in these activities.  [*Id.* at ¶¶ 71, 77].

In 2007, the State of Texas Attorney General began to investigate the activities at the WCTAC based on "whistle-blowing" by WCTAC employees, including two of the Plaintiffs. [*Id.* at ¶¶ 43, 53].  Investigators with the Attorney General conducted interviews and issued Grand Jury subpoenas to WCTAC employees.  [*Id.* at ¶¶ 48, 59, 66].  Plaintiffs allege that Barrera and the other individual Defendants threatened them with retaliation if they spoke to the investigators.  [*Id.* at ¶¶ 49-52, 54-57].  According to Plaintiffs, those employees who testified or were suspected of testifying before the Grand Jury were terminated.  [*Id.* at ¶¶ 67-68].

In September 2008, Plaintiffs, ten former employees of WCTAC, filed this instant federal civil cause of action.[3]  Pursuant to 42 U.S.C. § 1983, Plaintiffs allege Defendants violated their First and Fourteenth Amendments civil rights.  [*Id.* at ¶ 155].  Plaintiffs also allege that Defendants committed several state law offenses.  [*Id.* at ¶¶ 175-194].

On December 16, 2008, Barrera answered Plaintiffs' Complaint.  [Dkt. No. 36].  In her answer, Barrera admits that raffles occurred between the WCTAC employees.  [*Id.* at ¶ 7].  Barrera also states that "part of the monies collected from the ["*Rifa entre Amigos*"] were utilized to pay for calendars and materials which were considered promotional in nature."  [*Id.* at ¶ 9].

On January 22, 2009, Barrera along with Defendant Mary Ethel Novoa, filed a Motion requesting that the Court stay the civil proceedings in this case pending completion of the ongoing state criminal action against Novoa.  [Dkt. No. 45 at ¶ 3].  A state grand jury indicted Novoa with gambling promotion and engaging in organized criminal activity the same day Plaintiffs filed their civil complaint in this lawsuit.  [Dkt. No. 45, Ex. C].  On May 1, 2009, in a lengthy, well-reasoned opinion, Magistrate Judge J. Scott Hacker analyzed whether the Court in its discretion should stay all civil proceedings until the conclusion of Novoa's criminal case. [Dkt. No. 67].  Judge Hacker balanced the interests of the Defendants, the Plaintiffs, the Court, and the public.  [*Id.*].    Judge Hacker focused particularly on whether defendants would be unfairly and unduly prejudiced defending this civil action.  The simultaneous Texas Attorney General investigation might force them to assert their Fifth Amendment privilege against self-incrimination during discovery.  Based on the balancing interests, Judge Hacker, however, determined that a total stay of the case was not warranted.  [*Id.*].  Judge Hacker did grant a limited stay to continue as to Defendant Novoa until May 24, 2009 as she had been criminally

---

[3] All ten Plaintiffs had either resigned or been terminated from WCTAC at the time they filed this federal civil suit.

indicted.  [*Id.* at 26].  As to all other Defendants, Judge Hacker ordered that discovery begin immediately.  [*Id.*].  Indeed, that same day Judge Hacker issued a proposed scheduling order with deadlines for all pre-trial events, including a discovery deadline.  [Dkt. No. 68].  Judge Hacker ordered that the parties make any objections to the proposed deadlines by May 8, 2009.  [*Id.*].

On May 8, 2009, Barrera filed a Motion entitled "Objection to Entry of Scheduling Order, Advisory to Court, and Motion for Rule 26 Scheduling Conference."  [Dkt. No 69].  In this motion, Barrera advised the Court that criminal proceedings had been initiated against her four days earlier, on May 4, 2009.  [*Id.* at ¶ 3].  State prosecutors had extended a plea deal to her.  [*Id.* at ¶ 4].  Based on these changed circumstances, Barrera also asked the Court to hold a Rule 26 Scheduling Conference.  [*Id.* at ¶ 5].  At this conference, Barrera asserted that the Court should consider oral argument on a second motion to stay proceedings.  [*Id.*].  Judge Hacker denied Barrera's objections and entered the previously proposed scheduling order.  [Dkt. No. 72].

Then, on May 25, 2009, Barrera filed the Emergency Motion currently before the Court.  [Dkt. No. 77].  In this Motion, Barrera first moves the Court "to stay all discovery in the matter for an eleven month period of time."  [*Id.* at 1].  This request appears to be a Motion for Reconsideration of Judge Hacker's May 1, 2009 Order denying a complete stay of the civil action as well as a new Motion to Stay Proceedings.  On May 15, 2009, the Webb County District Attorney filed a formal three-count Criminal Information and Complaint against Barrera.  [*Id.*, Ex. A].  This Criminal Information and Complaint charges that Barrera knowingly (1) used or permitted another to use a building or room for gambling; (2) owned, manufactured, or possessed gambling paraphernalia; and (3) possessed for transfer or did transfer a card, stub,

ticket, or check designed to serve as evidence of participation in a lottery.  [*Id.*].  Second, Barrera requests that all "pre-trial matters be handled by the Honorable United States District Judge due to the procedural history of this cause . . . and the actions of the Magistrate Judge . . ."  [*Id.* at 1-2].  Specifically, Barrera objects to Judge Hacker's Opinions of May 1 and May 15, 2009.  [*Id.* at 5-6].  Barrera further asks that the Court to vacate these Orders.  The Court will take up this second matter first.

## II.    DISCUSSION

### A.    MOTION FOR DISTRICT COURT TO HANDLE ALL PRE-TRIAL MATTERS

In her Motion, Defendant Barrera asks this Court to conduct all future pre-trial matters instead of Magistrate Judge J. Scott Hacker because the "Magistrate Judge's May 1, and May 15, 2009 Memoranda and Opinions clearly demonstrate his inability to handle pre-trial."  [Dkt. No. 77 at 5-6].  As permitted under 28 U.S.C. § 636 and Southern District of Texas Local Rule 72, the Court referred all pre-trial non-dispositive matters in this case to Judge Hacker.  28 U.S.C. § 636(b)(1)(A) (2006) (stating that a "designated magistrate may hear and determine pretrial matters pending before a district court" with limited exceptions); S.D. TEX. LOCAL R. 72.  When a magistrate judge decides a non-dispositive matter, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or contrary to law."  FED. R. CIV. P. 72(a).  Factual findings are clearly erroneous when "the reviewing court upon examination of the entire evidence is left, with the definite and firm conviction that a mistake has been committed."  *Bolding v. Comm'r of Internal Revenue*, 117 F.3d 270, 273 (5th Cir. 1997) (citation omitted); *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204, 208

(N.D.Tex. 1996).  The Court turns to analyzing Defendant Barrera's individual objections to the Magistrate Judge's Opinions of May 1 and May 15, 2009.

### 1.    May 1, 2009 Opinion and Order

The Magistrate Judge's May 1, 2009 Opinion denied Barrera's first Motion to completely stay civil proceedings.  [Dkt. No. 67].  Barrera's primary objection to the Opinion is that Judge Hacker has ignored the criminal investigation and subsequent proceedings against Barrera. Barrera contends that Judge Hacker found "the impending criminal proceeding[s] were too speculative" to stay the case.  [Dkt. No. 77 at 7].  This is a self-serving simplification of the Opinion's analysis of one balancing factor, Barrera's private interest, in a four-part balancing test.[4]  What Judge Hacker found was that the criminal investigation of Barrera had been ongoing since October 2007 and Barrera had not been indicted as of May 1, 2009.  [Dkt. No. 67 at 19-20]. Thus, it was "speculative" to assume that the criminal investigation would significantly overlap with the civil case at that time.  Judge Hacker could not have predicted that Barrera would be indicted on May 15, 2009.  And for that reason, Judge Hacker added, "If Barrera is indicted and the conduct alleged in that indictment significantly overlaps with the conduct alleged in the civil suit, the Court will reevaluate whether a stay is warranted" – an analysis this Court will undertake in the second part of this Opinion.  [*Id.* at 20].   More importantly, Judge Hacker determined that Barrera had not established that she could not protect herself by selective invocation of her Fifth Amendment privilege.  [*Id.*].   Finally, these were Judge Hacker's conclusions as to only one factor in a four-part test.  Judge Hacker also weighed the Plaintiffs', the Court's, and the public's interests in a stay.

---

[4] Barrera does not appear to dispute the applicable legal standards set forth by Judge Hacker.  Barrera quotes the six-factor test recited in *State Farm Lloyds v. Wood*, Civ. No. H-06-503, 2006 WL 3691115, at *1 (S.D. Tex. Dec. 12, 2006), but makes no specific objections to Judge Hacker's four-part balancing of interests test.  Judge Hacker's four-part balancing of interest test incorporates all six factors recited in *State Farm Lloyds*.

Barrera also objects that the May 1, 2009 Opinion focuses too much "upon the factor of the potential (and speculative) prejudice to the Plaintiffs from the potential loss of testimony and evidence." [Dkt. No. 77 at 12].  The May 1, 2009 Opinion, however, does not focus primarily on the prejudice Plaintiffs may suffer by a stay in the civil case.  It applies equal weight and analysis to Defendants', Plaintiffs', the Court's, and the public's interests in a stay.  [Dkt. No. 67].  Based on its review of the May 1, 2009 Opinion, the Court finds that this Opinion is not clearly erroneous or contrary to law.

### 2.    May 15, 2009 Opinion and Order

Judge Hacker's May 15, 2009 Opinion entered a Scheduling Order for this case and denied Barrera's renewed request to stay this cause of action.  [Dkt. No. 72].  Barrera asserts Judge Hacker's "entire basis" for denying this renewed request "was the absence of any criminal proceedings against her." [Dkt. No. 77 at 7].  Barrera continues on to state that "a proffered plea arrangement does not suffice for Hacker to grant a stay of discovery and proceedings.  Hacker requires a formal criminal charge."   [*Id.*].  This argument fails to understand the nuances of Judge Hacker's May 15, 2009 Opinion.   In the May 15, 2009 Opinion, Judge Hacker acknowledged Barrera's statement that the Texas Attorney General had contacted her about a potential plea agreement.  [Dkt. No. 72 at 1].[5]  Judge Hacker just found that Barrera had not established that "she would suffer 'substantial and irreparable prejudice' if the civil case were allowed to proceed."  [*Id.* (quoting *SEC v. First Fin. Group of Texas, Inc.*, 659 F.2d 660, 668 (5th Cir. 1981))].  Barrera had not demonstrated that she could not protect herself by selectively invoking her Fifth Amendment privilege in the civil proceeding or that she could not defend both

---

[5] At one point, Barrera claims that she filed a copy of the proffered plea agreement in the state case under seal for the Court's *in camera* review.  [Dkt. No. 77 at 6].  Barrera's counsel gave the Clerk's Office documents which the Clerk's Office then gave to the Court.  The Court, however, did not review them as they were improperly filed. Indeed, the Court handed them back to Counsel at a May 15, 2009 Show Cause Hearing.  [Min. Entry of May 13, 2009].

her civil and potential criminal cases simultaneously. [*Id.* at 1-2]. Judge Hacker's denial of Barrera's renewed request was not just because of the absence of criminal proceedings against Barrera.

Barrera also insinuates that Judge Hacker should have granted her renewed motion to stay proceedings as a result of the Webb County District Attorney filing a Criminal Information and Complaint against her on May 15, 2009. [Dkt. No. 77 at 7]. Barrera contends that Judge Hacker should have known of these events based on the local media's coverage of the criminal case. [*Id.*]. Indeed, Barrera asks, whether ". . . Barrera's subsequent arrest on the May 15, 2009 criminal information escapes Hacker's attention? Does Hacker live in a cocoon in spite of the plethora of publicity surrounding Barrera's arrest and booking? Is Hacker completely out of sync with the course of proceedings in the State Criminal Justice System given this publicity?" [*Id.*]. It is a bedrock principle that it is the parties' obligation to bring forth whatever evidence it wants the Court to consider. It is not Judge Hacker's obligation to follow the daily occurrences in a parallel state criminal case. As the Seventh Circuit has so aptly stated, "Judges are not like pigs, hunting for truffles" or events affecting cases before them. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Any evidence that Defendant Barrera wanted the Court to consider should have been filed with the Court. Moreover, a court should not rely upon local newspaper articles and news programs, both forms of hearsay, to keep abreast of events affecting a case before it.[6] These media sources are hearsay evidence that a court cannot properly consider

---

[6] Under Federal Rule of Evidence 201, a Court may take judicial notice of facts "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b); *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998). Courts have taken judicial notice of official court records and proceedings in other state or federal court cases. *United States v. Capua*, 656 F.2d 1033, 1038 n.3 (5th Cir. 1981). But the determination whether to take judicial notice of a fact is discretionary. FED. R. EVID. 201(c). A court only has to take notice of an adjudicative fact when requested by a party and supplied with the necessary information. FED. R. EVID. 201(d). That did not occur here.

for the truth of the matters asserted.  *See Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556-57 (5th Cir. 1980), *cert. denied*, 454 U.S. 927 (1981).

Amidst these substantive objections, the Motion attacks Judge Hacker's personal character.  At various points, Barrera avers that "[t]his case has become unmanageable for Hacker;" "this former prosecutor is the last Magistrate Judge who should be handling the pre-trial" as well as "[d]oes Judge Hacker live in a cocoon."  [Dkt. No. 77 at 4, 7].  The Motion also refers to Judge Hacker as just "Hacker."  [*Id.*].  The Court reminds Counsel to direct objections to an opinion or order to the merits of the opinion or order.  Counsel should conduct himself befitting the profession.  S.D. TEX. LOCAL R. OF DISCIPLINE 1 ("Lawyers who practice before this Court are required to act as mature and responsible professionals, and the minimum standard of practice shall be the Texas Disciplinary Rules of Professional Conduct.").  Counsel is also reminded that the Texas Lawyer's Creed mandates that a lawyer "demonstrate[] respect for the Court . . ."  TEXAS LAWYER'S CREED: A MANDATE FOR PROFESSIONALISM (Sup. Ct. of Tex. and Tex. Crim. App. Nov. 1989).

In sum, Defendant Barrera has not established that any part of Judge Hacker's May 1, 2009 or May 15, 2009 Opinions are clearly erroneous or contrary to law.  These Opinions do not "clearly demonstrate [Judge Hacker's] inability to handle pre-trial" matters as Barrera asserts.  To the contrary, they are meticulously and well-reasoned opinions.  Thus, the Court will not withdraw its referral to Judge Hacker of non-dispositive pretrial matters in this case.  Accordingly, Barrera's Motion for the district court to handle all pre-trial matters is DENIED.

## B.      THIRD RENEWED MOTION FOR STAY OF CIVIL CASE

Barrera next moves for a complete stay of this civil case until the criminal case against Barrera has concluded, a period of eleven months by Barrera's estimation.  A district court has

the discretionary authority to stay a civil case pending resolution of a parallel criminal case if the interests of justice require. *SEC v. First Fin. Group of Texas, Inc.*, 659 F.2d 660, 666-67 (5th Cir. 1981) (citing *United States v. Kordel*, 397 U.S. 1, 11 (1970)). A stay is not a constitutional right. *Kordel*, 397 U.S. at 12 n.27. District Courts within the Fifth Circuit traditionally have applied a six-factor test to determine whether the interests of justice require a stay. These factors are: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case including whether the criminal Defendant has been indicted; (3) the private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by a delay; (4) the private interests of and burden on the defendant; (5) the interests of the courts; and (6) the public interest. *See, e.g.*, *United States ex rel. Gonzalez v. Fresenius Med. Cane N. Am.*, 571 F.Supp.2d 758, 762 (W.D.Tex. 2008) (citations omitted); *Dominguez v. Hartford Fin. Servs. Group, Inc.*, 530 F.Supp.2d 902, 905 (S.D.Tex. 2008); *Holden Roofing, Inc. v. All States Roofing, Inc.*, Civ. No. H-06-3406, 2007 WL 1173634, at *1 (S.D. Tex. Dec. Apr. 18, 2007); *State Farm Lloyds v. Wood*, Civ. No. H-06-503, 2006 WL 3691115, at *1 (S.D. Tex. Dec. 12, 2006).

Barrera's request for a stay has been thoroughly addressed by Judge Hacker's well-reasoned Opinion of May 1, 2009. [Dkt. No. 67]. To the extent that Barrera's pending request serves as an objection to the May 1, 2009 Opinion, the Court finds that the Opinion is not clearly erroneous or contrary to law and therefore, adopts it as this Court's Opinion. The Court also adopts the May 1, 2009 Opinion as it relates to the requested stay following Barrera's indictment, with the additional rationale as follows.

Barrera first argues that her personal interests favor a complete stay in the civil case, now that she has been indicted. According to Barrera, the criminal and civil complaints overlap.

[Dkt. No. 77 at 10-12].  The Webb County District Attorney indicted Barrera on May 15, 2009 for organized gambling promotion.  [Dkt. No. 77, Ex. A].  The Court agrees that there is a degree of overlap between Barrera's criminal prosecution in state court and the instant federal civil action.  Both cases involve purported gambling activities that allegedly occurred at the WCTAC office.  The Court, however, believes the sixty-day stay in discovery against Barrera granted on May 27, 2009 serves Barrera's personal interests.  [Dkt. No. 80].  A complete stay is not necessary here.  The Court does not know how long the state criminal case against Barrera will last.  Texas does not have a Speedy Trial Act as in the federal system.  A sixty-day stay also permits Barrera to investigate her ability and need to invoke the Fifth Amendment privilege during discovery.  The Fifth Circuit has advised that a stay order will be reversed when found to be of an indefinite or immoderate duration.  *McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1981); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 257 (1936).

Second, Barrera contends that Plaintiffs will not be prejudiced by waiting until the conclusion of the criminal case against Barrera.  Barrera states the trial "will be transcribed and there will simply be no loss of testimony or documents."  [Dkt. No. 72 at 12-13].  Barrera also implies that Plaintiffs' interests should not be considered: Plaintiffs "were the whistleblowers whose actions culminated in a well-timed civil complaint" filed concurrently with the criminal actions.  [*Id.*].  The Court disagrees and believes that Plaintiffs will be prejudiced by a complete stay.  Plaintiffs here are not parties to the criminal case.  They do not have the ability to preserve their interests in the civil case through the prosecution of the criminal case, as the Government might.  Moreover, Plaintiffs have already waited over eight months in this case to begin discovery.  A long delay can lead to a loss of evidence—documents can be misplaced or destroyed and witnesses' memories can fade.  In turn, a loss of evidence can frustrate Plaintiffs'

abilities to put forth an effective case.   Therefore, Plaintiffs' interests militate against a complete stay in this case.

Third, Barrera avers that the Court's and public's interests weigh in favor of a stay. According to Barrera, the Court will have to "frequently intervene in the discovery process to make rulings on claims of Fifth Amendment privileges to now be asserted by Defendant Barrera during the pendency of the parallel state criminal action." [Dkt. No. 72 at 13].  Barrera believes these interventions will be a "burdensome task given this court's heavily congested criminal docket."  [*Id.*].  The Court realizes that it may have to rule on selective claims of Fifth Amendment privilege and objections to specific requests during the discovery process.  But Barrera fails to show the Court how she would invoke her Fifth Amendment privilege. Moreover, in her answer, Barrera has already admitted that raffles occurred at the WCTAC.  The need for the Court's possible intervention does not outweigh the Court's desire for judicial expediency.  A court "has an obligation to move its docket, and not let cases languish before it." *In re Scrap Metal Antitrust Litig.*, Civ. No. 1:02-0844, 2002 WL 31988168, at *7 (N.D. Ohio Nov. 7, 2002).  The public also has in interest in the resolution of disputes in a timely manner and the fair treatment of all parties.  *St. Martin v. Jones*, Civ. No. 08-1047, 2008 WL 4534398, at *3 (E.D.La. Oct. 2, 2008).

Based on its analysis of the Defendant's, Plaintiffs', Court's, and public's interests, the Court believes that a stay of the entire case is not necessary or warranted.  The Court believes that a 60-day stay in all discovery as to the individual defendants is appropriate.  This 60-day stay will permit the individual defendants to understand the criminal charges against them and how to respond appropriately in this civil suit.

### III.    CONCLUSION

The Court **DENIES** Defendant Barrera's Motion that this Court (1) handle all future pre-trial matters in this case; (2) vacate Judge Hacker's Opinions of May 1, 2009 and May 15, 2009; and (3) stay all discovery in this case for eleven months.

IT IS SO ORDERED.

DONE this 1st day of June 2009, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**